**William OVERTON, Plaintiff,**

v.

**CITY OF HARVEY, Defendant.**

No. 97 C 6060.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 17, 1998.

Marcia B. Gevers, Marcia B. Gevers & Associates, Flossmoor, IL, for Plaintiff.

Timothy Charles Lapp, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., South Holland, IL, John A. Hiskes, Buikema, Hiskes, Dillner, O'Donnell & Marovich Ltd., Orland Park, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court are three motions, two of which were filed by defendant the City of Harvey ("the City") and one of which was filed by plaintiff William Overton ("Overton"). These are (1) the City's motion to strike Exhibits 5, 6, 9, 10, 11, 12, 13, 14, 15,

**898**

16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36 and 39 of Overton's motion for summary judgment, paragraphs 10, 30, and 31 of Overton's 12(M) Statement, and all references in Overton's Memoranda in Support of Motion for Summary Judgment; (2) the City's motion for summary judgment; and (3) Overton's motion for summary judgment. For the following reasons, the court (1) grants in part and denies in part the City's motion to strike; (2) grants in part and denies in part the City's motion for summary judgment; and (3) denies Overton's motion for summary judgment.

## I. BACKGROUND[1]

In April of 1986, the City hired Overton as a police officer in its Police Department ("the Department"). His civil service rank was patrol officer. In August of 1988, Overton was appointed to the position of detective, which is not a civil service rank. In November of 1989, Overton was reassigned to the position of patrol officer. Overton did not question this reassignment. In October of 1991, Overton was assigned back to the position of detective. In February of 1993, Overton became a detective sergeant. In May of 1993, he was appointed to the position of inspector of detectives.

Around October of 1993, Overton sat for a civil service examination for the civil service rank of sergeant. The evidence is conflicting with respect to the results of this exam. Overton testified at his deposition that he achieved the highest score on the exam. (Pl.'s 12(M) Statement ¶ 12.) In contrast, Commander Camille Damiani ("Commander Damiani"), who also sat for the exam, testified at her deposition that only the results from the written portion of the 1993 sergeant's exam were posted and that the final results, which included the results from the oral and written portions of the exam, were never posted. (Damiani Dep. at 39–40, 55.)

The evidence is also conflicting with respect to what promotions took place in the Department after the October 1993 sergeant's exam. Overton testified that despite receiving the highest score on the exam, he was not promoted to sergeant while other non-white officers who did not pass the exam were promoted to sergeant. (Pl.'s 12(M) Statement ¶ 13; Overton Dep. at 77–82.) Those non-white officers were Lee Gray, Martha Barner, Larry Patterson, and Chief of Police Ronnie Burge ("Chief Burge"). (Overton Dep. at 77, 81–82.) The City contends that Overton stated in his deposition that he did not know whether anyone was ever promoted to sergeant as a result of the exam. (Def.'s 12(M) Statement ¶ 13.)

On January 10, 1994, Chief Burge reassigned Overton from the position of inspector back to the position of patrolman. Overton claims that this reassignment was without justification or cause. (Pl.'s 12(M) Statement ¶ 14.) The City denies that the reassignment was without justification or cause, explaining that preceding this reassignment Overton had been disciplined and that Chief Burge told Overton that the reassignment was based upon a manpower shortage. (Def.'s 12(N) Statement ¶¶ 14, 36.)

Overton also claims that in January of 1994, Chief Burge ordered Overton to turn in his uniforms and told him to borrow uniforms. (Pl.'s 12(M) Statement ¶ 15.) Chief Burge testified that he does not recall ordering Overton to turn in his uniforms. (Burge Dep. at 8.)

In March of 1994, a squad car that Overton was driving filled up with smoke. Overton inhaled the smoke. On March 29, 1994, Overton's doctor placed Overton in the intensive care unit at Ingalls Hospital for a two-day period with a diagnosis of stress. On April 14, 1994, Overton's doctor released Overton to return to full duty. Before allowing Overton to return to work, the City ordered Overton to see the City's doctor, Dr. Richard Egewele ("Dr. Egewele"), for a return-to-work evaluation. On April 16, 1994, Dr. Egewele recommended that Overton be placed on light duty. At that time, Overton was denied light duty even though light duty was regularly given for job-related injuries or illnesses.[2] Between April 16, 1994 and

---

1. Unless otherwise indicated, the following facts are undisputed facts taken from the parties' Local General Rule 12 Statements.

2. In its 12(M) and 12(N) Statements, the City claims that Inspector Martha Barner denied Overton's request for light duty because Barner did not believe that Overton was injured on duty.

July 4, 1994, Dr. Egewele did not release Overton to return to regular work without restrictions even though a personal physician had released him. On July 4, 1994, Overton received a letter from Chief Burge, informing Overton that Dr. Egewele had released him for full duty on July 5, 1994 and that he was to report for duty on that date.

On July 5, 1994, Overton worked a full day and reported for duty on July 6, 1994. While working on July 6, 1994, Overton began to breathe heavily. He was admitted into the emergency room at Ingalls Hospital and treated for asthma. Within days of the July 6, 1994 emergency room visit, Overton met with his doctor who diagnosed Overton as having an acute asthma attack. On September 26, 1994, Overton's doctor released him to return to duty without restrictions on October 3, 1994. Overton advised Inspector Barner that his doctor had released him to return to duty without restrictions.

Overton claims that he called in sick every day during the period of July 6, 1994 through October 3, 1994. (Overton Dep. at 55.) Overton also claims that during that period he made numerous calls to Inspector Barner to find out to which shift he should report but that Inspector Barner would not return his calls. (Overton Dep. at 56.) Inspector Barner testified that she does not recall Overton calling her and her refusing to speak to him. (Barner Dep. at 37.) According to Overton, Inspector Barner finally called him on October 3, 1994 and told him that he could not return to work until Chief Burge said so. (Overton Dep. at 56.) Inspector Barner testified that she did not recall telling Overton that he could not return to work. (Barner Dep. at 37.)

During the period from October 3, 1994 through April 19, 1995, Overton was physically able to perform the work of a policeman; however, he did not work during this time period. Overton claims that he was not allowed to return to duty until after April 19, 1995, which was after the 1995 mayoral election. (Pl.'s 12(M) Statement ¶ 45.) Chief Burge testified that had Overton submitted a document releasing him back to work, he would have been allowed to return to work. (Burge Dep. at 61–62.)

Overton claims that during the period in which he was not allowed to work, Department officers made numerous sick checks on his home. (Pl.'s 12(M) Statement ¶¶ 39–40.) The City submitted evidence that sick checks were made on any officer who called in sick regardless of the officer's race and that City officers had made a sick check on the home of Officer James Brooks, who is black. (Def.'s 12(N) Statement ¶¶ 15, 17.) The City also submitted evidence that it was the Department's policy since before Burge became Chief to make sick checks on an officer's house when the officer had called in sick. (Def.'s 12(N) Statement ¶ 19.)[3] Overton claims that the City's evidence with respect to the sick checks does not relate to the period of time during which the sick checks were made on him. (Pl.'s 12(M) Statement ¶ 15.)

In April of 1995, Nicholas Graves was elected to replace David Johnson as the City's Mayor. After Graves was elected Mayor, Chief Burge stopped working for the Department; Christopher Barton was named acting Chief until Phillip Hardiman became the City's Chief of Police on May 8, 1995; and, on April 19, 1995, Overton resumed working for the Department.

When Overton resumed working for the Department, he was assigned to Internal Affairs as an investigator. Commander Damiani was his supervisor. Overton claims that he had to work in Internal Affairs because he had not been given his uniforms back after Chief Burge had made him turn them in. (Pl.'s 12(M) Statement ¶ 49.) Between April 19, 1995 and June 20, 1997, Overton remained an investigator in Internal Affairs.

Overton complains of many ways in which he was treated while working as an investigator in Internal Affairs. Overton claims that (1) he was never given a working vehicle to perform his duties as an investigator; (2) he was not allowed to work overtime; (3) he was

---

The City, however, does not provide a cite to the record for this evidence and, thus, this evidence is not before the court.

**3.** Overton objects to this statement as hearsay. The court, however, can see no reason why, and Overton has made no argument as to why, the cited testimony constitutes hearsay.

the only officer required by Deputy Chief Barton to punch in and out on a time clock and to notify Barton's secretary when he was leaving; and (4) Chief Hardiman told Overton that he had no future with the Department and that he should seek employment elsewhere.

Overton resigned from the Department effective June of 1997. When he resigned, he requested to be paid all monies due him. Overton received a payment of $18,870.88. When he received the payment, he signed a release with the City on July 18, 1997. The signed release reads as follows:

I, William Overton, have received a check in the amount of $18,870.88 for accumulated time accrued on the books of the Harvey Police Department.

Thereby releasing the Harvey Police Department from any further obligation, as to any time due me.

I agree that I have received all money owed to me by the Harvey Police Department.

Although Overton had many different assignments while working with the Department, it is undisputed that his civil service rank of patrolman never changed. Overton did not consider the positions of detective, inspector and so on to be permanent positions. In fact, no position in the Department is permanent unless it is a civil service rank. Further, it was common for officers to move back and forth from patrol to detective. These assignments could be made on the basis of manpower. The assignments, whether they involved an increase or decrease in pay, were made at the whim of the Chief of Police.

On August 27, 1997, Overton filed suit against the City in this court, alleging that the City discriminated against him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964. Overton claims that he was subjected to the following adverse employment actions because he is white: (1) he was not promoted to sergeant despite having received the highest score on a civil service examination for rank of sergeant and then was demoted without cause; (2) he was denied light duty and prevented from working despite the recommendation of the City's doctor; (3) he was threatened with

termination for failing to report for duty even though he was on sick leave; (4) his paycheck was withheld without cause; (5) he was not allowed to return to duty until April 19, 1995 without cause; (6) he was subjected to daily sick checks during the period of October 3, 1994 through April 19, 1995; (7) he was subjected to continued harassment after he returned to work on April 19, 1995; and (8) he was constructively discharged from the Department in June of 1997. In addition to the way that he was treated, Overton claims that the following is evidence of discrimination: (1) evidence that on more than one occasion Chief Burge and Mayor Johnson stated that the City was a black town and they wanted an "all black" police force, (Pl.'s 12(M) Statement ¶ 11); (2) evidence that while Burge was Chief and Johnson was Mayor, the City terminated nineteen officers, seventeen of whom were white, (Pl.'s 12(M) Statement ¶ 42); and (3) Mayor Graves' testimony that anyone who was white who worked under Mayor Johnson was discriminated against. The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1343.

## II. *DISCUSSION*

### A. *The City's motion to strike*

In support of his motion for summary judgment, Overton submitted thirty-nine exhibits and a 12(M) Statement. In response, the City has filed a motion to strike exhibits 5, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36 and 39 of Overton's motion for summary judgment, paragraphs 10, 30, and 31 of Overton's 12(M) Statement, and all references in Overton's Memoranda in Support of Motion for Summary Judgment. The City argues that (1) the above exhibits are inadmissible hearsay and (2) the statements contained in paragraphs 10, 30, and 31 of Overton's 12(M) Statement are based on inadmissible hearsay. Overton argues that the exhibits and statements are admissible under various exceptions to the rule against hearsay.

### 1. The City's motion to strike exhibits 9, 10, 11, 12, 15, 22, and 35

In its reply brief, the City withdrew its objections to exhibits 9, 10, 11, 12, 15, 22, and

35 and did not renew its request to have the court strike those exhibits (as it did with the other exhibits). The City, however, did not expressly withdraw its motion as to those exhibits. Nonetheless, from the City's reply brief, the court finds that the City intended to withdraw its motion as to those exhibits. Accordingly, the court denies as moot the City's motion to strike exhibits 9, 10, 11, 12, 15, 22, and 35.

### 2. The City's motion to strike exhibits 5 and 6

■ Exhibit 5 is a document containing Overton's answers to the City's first set of interrogatories. Exhibit 6 is a document containing Overton's answers to the City's first set of supplemental interrogatories. The City argues that the court cannot consider these documents because the documents are not verified.

Answers to interrogatories must meet two basic requirements to satisfy Federal Rule of Civil Procedure 33. First, the questions must be answered under oath. FED.R.CIV.P. 33(b)(1). Second, the answers must be signed by the person answering the interrogatory. FED.R.CIV.P. 33(b)(2).

In this case, the answers to interrogatories submitted by Overton satisfy neither of Rule 33's two basic requirements. First, the answers were signed by Overton's attorney and not Overton. Second, the answers are not verified. Accordingly, the court grants the City's motion to strike exhibits 5 and 6.

One important matter, however, is that the City cannot have its cake and eat it too. The City has submitted two pages of Overton's exhibit 5 as exhibit J in support of the City's motion for summary judgment. It makes no difference which party submitted the answers, the answers do not satisfy the basic requirements of Rule 33. Accordingly, the court also strikes exhibit J of the City's motion for summary judgment.

4. Overton's specific argument was that the document "is not hearsay but a recording made by Plaintiff." (Pl.'s Memo. in Resp. to Def.'s Mot. to Strike at 3.) This court reads this as asserting that the document is admissible under Federal Rule of Evidence 803(5), which excepts recorded recollections from the rule against hearsay.

### 3. The City's motion to strike exhibit 13

■ Exhibit 13 is a document written by Overton, stating that he submitted several forms to "D. Craft." Overton submitted exhibit 13 to show that he submitted the forms. The City argues that the document is inadmissible hearsay. Overton argues that it is not hearsay because it qualifies as a recorded recollection.[4]

■ Federal Rule of Evidence 803(5) provides an exception to the hearsay rule for recorded recollections. FED.R.EVID. 803(5). For a document to be admissible under Rule 803(5), the party seeking to admit the document must show that (1) the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately and (2) the witness made or adopted the record when the matter was fresh in the witness' memory and the record reflects that knowledge correctly. *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir.1998).

In this case, Overton has made no attempt to lay the proper foundation for exhibit 13's admissibility. In his deposition, Overton testified about the matter contained in the document, which shows that he does not have an "insufficient recollection to testify fully and accurately" to the matter which the document concerns. (Overton Dep. at 53–54.) Accordingly, the court grants the City's motion to strike exhibit 13.

### 4. The City's motion to strike exhibits 14, 16, 17, 20, 21, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36

Exhibits 14, 16, 17, 20, 21, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36 are various documents submitted by Overton. The City contends that the court cannot consider these documents because they constitute inadmissible hearsay. Overton contends that the documents are admissible under the business records exception to the hearsay rule.[5]

5. Overton only specifically argues that exhibits 20 and 21 are admissible under the business records exception. He argues that exhibits 14, 16, 17, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36 are admissible because they were either "received," "kept," "tendered," or "made" in the "normal course of business." The court cannot imagine what hearsay exception other than the business record exception that Overton is trying

Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for records of regularly conducted activity. FED. R.EVID. 803(6). This exception is commonly referred to as the business records exception. *See, e.g., Collins,* 143 F.3d at 337. In order for a document to be admissible as a business record under Rule 803(6), the party attempting to admit the document must establish that the document was " 'kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or otherwise qualified witness.' " *Id.* (quoting *United States v. Briscoe,* 896 F.2d 1476, 1494 (7th Cir.1990) (quoting *United States v. Chappell,* 698 F.2d 308, 311 (7th Cir.1983))). While the qualified witness need not be the person who prepared the record and need not have personal knowledge of the entries in the record, the qualified witness must have knowledge of the procedure under which the records were created. *Collins,* 143 F.3d at 337–38.

Exhibit 14 is a letter written by Dr. Dorothy Jones regarding her treatment of Overton. Overton cites the letter as proof that Dr. Jones diagnosed him with asthma. (Pl.'s 12(M) Statement ¶ 27.) Overton claims that the letter is admissible as a business record. Overton, however, has not offered the testimony of a qualified witness showing that the foundational requirements of Rule 803(6) are satisfied. The only foundational testimony he has offered is his own. Overton, however, is not qualified to lay the foundation for this letter as there is no evidence that Overton knows about the procedure under which the records were created. *See Collins,* 143 F.3d at 338. Accordingly, the court grants the City's motion to strike exhibit 14.

Exhibit 16 is a letter written by Overton's attorney, in which his attorney demands that Chief Burge rescind his order that officers check Overton's home twice each shift. Overton cites the letter as proof that officers were ordered to make two physical checks on Overton every scheduled working day on which Overton failed to report for duty. (Pl.'s 12(M) Statement ¶ 39.) As with exhibit 14, Overton has not laid a proper foundation for this letter through the testimony of a qualified witness. Accordingly, the court grants the City's motion to strike exhibit 16.

Exhibits 17 and 20 are "Harvey Police Department Intra Departmental Communication[s]." Exhibit 17 is a memo written by Barner, stating that she would like Linkus to investigate how officers were making sick checks on officers who called in sick. Overton cites this document as proof that sick checks were being made on Overton. (Pl.'s 12(M) Statement ¶ 39.) Exhibit 20 is a memo from Chief Burge to all personnel, stating that certain individuals were being promoted to the position of sergeant. Overton cites to it to prove that these individuals were promoted to sergeant. (Pl.'s 12(M) Statement ¶ 13.) As with exhibits 14 and 16, Overton has not laid a proper foundation for these memos through the testimony of a qualified witness. Accordingly, the court grants the City's motion to strike exhibits 17 and 20.

Exhibit 25 is a letter from Timothy Lapp, stating that he would like to find out if anyone has ever found Overton home during the period when he had called in sick. Overton cites the letter in support of his statement that he had made many calls to Barner to find out to which shift he should report but that Barner had not returned his calls. (Pl.'s 12(M) Statement ¶ 35.) The letter is not hearsay because it is not offered to prove the truth of the matter asserted. The letter, however, in no way supports Overton's statement in paragraph 35 and has not been authenticated. Accordingly, the court grants the City's motion to strike exhibit 25.

Exhibit 27 is a copy of three forms which seem to be message slips. The comments contained in the slips are: (1) "Overton notified that Chief will advise when to return for duty"; (2) "Ofc. Overton notified on answering machine of doctor's appointment on 2 July 94 at 12:30"; and (3) "Overton notified to return to full duty." Overton cites to these statements to prove (1) that he was to report to full duty on July 5, 1994, (Pl.'s

to assert as to exhibits 14, 16, 17, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36; thus, the court construes Overton as arguing that those exhibits also are admissible under the business records exception.

12(M) Statement ¶ 23); (2) that he was told by Barner that he could not return to work until Burge said he could, (*id.* ¶ 36); and (3) that he was told that he could not return to duty until Burge said he could, (*id.* ¶ 37). As with the above exhibits, Overton has not laid a proper foundation through the testimony of a qualified witness to admit this document under the business records exception. Accordingly, the court grants the City's motion to strike exhibit 27.

Exhibit 28 is an employee calendar which purportedly shows which days in 1994 that Overton worked, took as a paid holiday, took as sick leave, and took as vacation. This document is submitted to show that Overton worked a full shift on July 5, 1994 and reported for work on July 6, 1994 and that Overton called in sick each day between July 6, 1994 and October 3, 1994. (Pl.'s 12(M) Statement ¶ 24.) As with above exhibits, Overton has not laid a proper foundation through the testimony of a qualified witness to admit this document under the business records exception. Accordingly, the court grants the City's motion to strike exhibit 28.

Exhibit 30 is purportedly the results from the police sergeant's exam which were posted on February 7, 1994. Overton has offered it to prove that he had the highest score on that exam. (Pl.'s 12(M) Statement ¶ 30.) As with the other exhibits, Overton has not laid a proper foundation through the testimony of a qualified witness to admit this document under the business records exception. Accordingly, the court grants the City's motion to strike exhibit 30.

Exhibits 32, 33 and 36 are forms from the Lincoln Medical Center relating to Overton's physical condition. These forms are offered to prove that Overton had been released for duty without restrictions. (Pl.'s 12(M) Statement ¶ 22.) As with other exhibits, Overton has not laid a proper foundation through the testimony of a qualified witness to admit these documents under the business records exception. Accordingly, the court grants the City's motion to strike exhibits 32, 33, and 36.

Exhibit 34 is a prescription from Dr. Bella Prospero, stating that Overton may return to work on April 14, 1994. Overton submitted this document to show that his doctor released him to return to full duty on April 14,

1994. (Pl.'s 12(M) Statement ¶ 19.) As with other exhibits, Overton has not laid a proper foundation through the testimony of a qualified witness to admit this document under the business records exception. Accordingly, the court grants the City's motion to strike exhibit 34.

■ Exhibits 21, 24, and 26 are documents submitted by Overton in support of his motion. Overton, however, has not cited any of these documents in either his 12(M) or 12(N) Statements. Therefore, from what the court can tell, these letters are not offered to prove any issue of fact. Accordingly, the court need not and cannot address whether these exhibits constitute inadmissible hearsay because Overton has not relied on them. Accordingly, the City's motion to strike exhibits 21, 24, and 26 is denied as moot. The court notes, however, that this ruling is irrelevant because the court is not considering the documents since Overton has not relied on them to prove any fact asserted.

### 5. The City's motion to strike exhibits 23, 31, and 39

Exhibit 23 is a document from Ingalls Family Care Center dated September 26, 1994, in which a doctor released Overton for work on October 3, 1994 with no restrictions. A handwritten note on the bottom of the document states, "I Officer Overton submitted a copy of this release to D. [some unreadable name] on 30 Sep 94 @ 2000 Hrs." Overton cites this document as proof that (1) he saw his doctor on September 26, 1994 and the doctor released him to return to duty without restrictions on October 3, 1994, (Pl.'s 12(M) Statement ¶¶ 33, 37); (2) he immediately advised the City that he had been released to full duty, (*id.* ¶ 34); and (3) he was able to perform the work of a policeman from October 3, 1994 to April 19, 1995, (*id.* ¶ 44). Overton does not make an argument as to how these documents are not inadmissible hearsay. The documents are not admissible under the business records exception as Overton has not provided the testimony of a qualified witness to lay the proper foundation to admit these documents as such. Accordingly, the court grants the City's motion to strike exhibit 23.

Exhibit 31 is an emergency room discharge sheet, which diagnoses Overton with asthma and instructs Overton not to work until cleared by a private physician. Overton offers the document to prove that (1) he was admitted to the emergency room and diagnosed with asthma and (2) the emergency room doctor told Overton to stay off work until he followed up with his doctor. (Pl.'s 12(M) Statement ¶¶ 25–26.) Overton does not make an argument as to how this document is not inadmissible hearsay. The document is not admissible under the business records exception as Overton has not provided the testimony of a qualified witness to lay the proper foundation to admit this document as such. Accordingly, the court grants the City's motion to strike exhibit 31.

■ Exhibit 39 is a videotape submitted by Overton. Overton explains that he made the tape "while be was being harassed during the night." Overton cites the tape as proof that officers of the City were ordered to make physical checks on Overton every scheduled working day on which he failed to report for duty. Overton's only argument is that the tape is admissible because he kept the tape in his possession until he tendered it to the City. Overton misses the point. The statements made in the tape are hearsay. These statements are inadmissible unless they qualify as an exception to the rule against hearsay. Overton had made no argument as to how these statements are admissible and it is not the court's role to supply those arguments. Accordingly, the court grants the City's motion to strike exhibit 39.

### 6. The City's motion to strike paragraph 10

Paragraph 10 of Overton's 12(M) Statement reads as follows: "On or about March 1993, the CITY OF HARVEY'S agent and police chief, Ronnie Burge, remarked that he wanted an 'all-black' police force, that he would run white officers out of the department and that plaintiff was on his list." Overton cites his deposition in support of this statement. From Overton's deposition, it is clear that Chief Burge never made this statement to Overton; rather, other officers told Overton that Chief Burge made this statement. There is no deposition testimony from those other officers.

■ Overton argues that the statement in paragraph 30 is admissible as an admission against interest. Overton is wrong. Statements against interest are only excluded from the rule against hearsay when the declarant in "unavailable." FED.R.EVID. 804(b). In this case, not only is there no showing that Chief Burge is unavailable, Overton deposed Chief Burge. Accordingly, Chief Burge's statement cannot be admissible as a statement against interest.

■ It may be that Chief Burge's statement would not be hearsay because it is an admission by a party-opponent. *See* FED.R.EVID. 801(d)(2). A more fundamental problem, however, exists with the statement in paragraph 30. The statement in paragraph 30 contains hearsay within hearsay. The first hearsay statement is Burge's alleged statement; the second is the officers' statement that Burge made the statement. Even if Burge's statement were admissible, the officers' statements must be also be admissible. *See* FED.R.EVID. 805. Overton has made no argument as to how the officers' statements are admissible. Accordingly, the court grants the City's motion to strike paragraph 10 of Overton's 12(M) Statement.

### 7. The City's motion to strike paragraph 30

Paragraph 30 states: "On September 8, 1994 plaintiff learned from Herschel Dungey that chief of police Burge had said plaintiff failed to report for duty on July 5, 1995 and just went AWOL and that the city was supposed to seek plaintiff's termination." Overton cites to his deposition in support of this statement.

Overton argues that Dungey's statement is admissible as a statement against interest. As with the above statement, however, Overton has made no showing that Dungey is "unavailable" as defined by Rule 804. FED.R.EVID. 804(a). Accordingly, Dungey's statement is not admissible as a statement against interest.

■ It is possible that the statement is admissible as an admission by a party-opponent. FED.R.EVID. 801(d)(2). However, Overton has made no attempt in his 12(M)

Statement to explain who Dungey is or what his responsibilities are. Reviewing Overton's deposition, the court was able to find out that Dungey was the "City Administrator." However, that title alone does not show that he is either "a person authorized by the party to make a statement concerning the subject" or "the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED.R.EVID. 801(2)(d)(C)–(D). Accordingly, the court grants the City's motion to strike paragraph 30.

### 8. The City's motion to strike paragraph 31

█ Paragraph 31 provides: "On September 8, 1994, Plaintiff also learned during his meeting with Herschel that his last pay check had been returned to City Hall by chief of police Burge." He cites his deposition in support of this statement. According to his deposition, it was Camille Crenshaw who told Overton that Burge had sent his paycheck back to City Hall.

Overton argues that Crenshaw's statement "is admissible to show how Plaintiff was informed by Defendant that he would not be paid." Overton misses the point. Crenshaw's statement is hearsay unless it is an admission by a party-opponent or fits into some hearsay exception. Overton had made no attempt to show how Crenshaw's statement would be admissible. It is not clear to the court who Crenshaw is or whether the statement is an admission by a party-opponent. The court cannot speculate as to how this statement is admissible. Accordingly, the City's motion to strike paragraph 31 is granted.

### B. *The parties' cross-motions for summary judgment*

### 1. Standard for deciding a motion for summary judgment

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists

for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party presents a prima facie showing that he is entitled to judgment as a matter of law, the non-moving party may not rest upon the mere allegations or denials in its pleadings but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir.1989).

### 2. Local General Rule 12

█ Before addressing the merits of the parties' motions, the court must address Overton's reliance on facts in his briefs that the court cannot find in his 12(M) or 12(N) Statements. Local General Rule 12 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the court." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir.1995). Facts not contained in the party's 12(M) and 12(N) Statements are not properly before the court. *Id.; Simoneau v. Transkrit*, No. 97 C 4553, 1998 WL 173241, at *3 (N.D.Ill. Apr.9, 1998). The Seventh Circuit has upheld strict compliance with Rule 12 on numerous occasions. *Huff v. UARCO Inc.*, 122 F.3d 374, 382 (7th Cir.1997).

█ In this case, Overton recites many facts in his briefs to which he provides no cite and which the court can find nowhere in either his 12(M) or 12(N) Statement. It is not the court's role to scour the exhibits to determine what the relevant facts in a case are. Further, this court believes that "strict, consistent, 'bright line' enforcement [of Rule 12] is essential to obtaining compliance with the rule and to ensuring that long-run aggre-

gate benefits in efficiency inure to district courts." *Midwest Imports*, 71 F.3d at 1316. Accordingly, the court will not consider those facts which are not contained in Overton's Rule 12(M) and 12(N) Statements.[6]

### 3. Overton's Title VII claim

Both parties have moved for summary judgment on Overton's Title VII claim. Overton argues that he is entitled to summary judgment because he has established a case of race discrimination with both direct and circumstantial evidence. The City argues that Overton has failed to adduce evidence of intentional discrimination sufficient to survive a motion for summary judgment.

There are two different methods of proof that a plaintiff may use in an effort to defeat an employer's motion for summary judgment. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir.1998). The first method is the direct method. *Id.* The second is the "indirect" burden-shifting method established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Overton claims that he has established a case of intentional discrimination under both the direct and the indirect methods. The court first addresses whether Overton has stated a claim of discrimination under the direct method.

### a. The direct method of proving intentional discrimination

Under the direct method, the plaintiff may defeat summary judgment by presenting enough evidence to show that the adverse employment action was the result of intentional discrimination. *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir.1998). This evidence may be either direct or circumstantial. *Pafford*, 148 F.3d at 665; *Kennedy*, 140 F.3d at 722.

Overton claims that he has presented both direct and circumstantial evidence of intentional discrimination. The court first addresses whether Overton has presented direct evidence of intentional discrimination. After addressing Overton's direct evidence, the court considers whether Overton has presented sufficient circumstantial evidence to establish a case of discriminatory intent.

 Overton first claims that he has presented direct evidence of intentional discrimination. Direct evidence is evidence which, "if believed by the trier of fact, will prove a particular fact in question without reliance upon inference of presumption." *Hunt–Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1010 (7th Cir.1997). In an employment discrimination case, direct evidence of discriminatory motivation usually consists of an acknowledgment on the part of the employer of discriminatory intent. *Kennedy*, 140 F.3d at 722. In order for an isolated comment to rise to the level of direct evidence of discrimination, the isolated comment "must be contemporaneous with the discharge or causally related to the discharge decision making process." *Geier v. Medtronic, Inc.*, 99 F.3d 238, 242 (7th Cir.1996). To constitute direct evidence, the evidence of discriminatory intent "must not only speak directly to the issue of discriminatory intent, it must also relate to the specific employment decision in question." *Randle v. LaSalle Telecomms., Inc.*, 876 F.2d 563, 569 (7th Cir.1989).

Overton's purported direct evidence consists of Mayor Graves' deposition testimony that (1) Mayor Johnson and Chief Burge said that they wanted an all-black police department; (2) Chief Burge terminated "a lot of people by writing them up or by bringing phony charges"; (3) many officers told Mayor Graves that "all you had to do was go down the list and see who they fired and what they did, it was obvious they were purging the department"; (4) "all whites were discriminated against prior to the mayor election of 1995"; (5) there was no record of why plaintiff had been unable to return to work; (6) plaintiff was not terminated nor was he suspended in 1994; and (7) plaintiff

---

**6.** The court also notes that there are many times when Overton states a fact in his 12(M) or 12(N) Statement but does not provide a specific cite to the record. (*E.g.*, Pl.'s Resp. to Def.'s Additional Matters To Be Considered ¶ 34.) There are too many such instances for this court to recite them all. The court simply notes that where this occurs, the court will not consider the stated fact as it is not supported by a specific cite to the record as required by Rule 12. Local Gen.R. 12.

was brought back because Mayor Graves considered his situation frivolous. (Pl.'s Resp. at 2.) The statements contained in above items 2, 3, 5, 6, and 7, however, are not before the court because those facts were not included in Overton's 12(M) and 12(N) Statements. *See supra* Part II.B.2. Thus, the only evidence of the above which is before the court is Mayor Graves' testimony (1) that Mayor Johnson and Chief Burge said that they wanted an all-black police department and (2) that "all whites were discriminated against prior to the mayor election of 1995." The issue is whether these two items are direct evidence that Overton suffered the adverse employment actions that he claims he did because of his race.

 Mayor Johnson's and Chief Burge's statements that they wanted an all-black police department does not constitute direct evidence of intentional discrimination. There is no evidence of exactly when these comments were made. (*See* Graves Dep. at 21.) All Mayor Graves can remember is that the comments were made sometime while Burge was Chief of Police and while Johnson was Mayor. Further, there is no evidence that these comments were causally related to the adverse employment actions that Overton allegedly suffered. Thus, Overton has failed to show that the isolated comments arose to the level of direct evidence of intentional discrimination. *See Geier,* 99 F.3d at 242.

 Likewise Mayor Graves' testimony that "all whites were discriminated against prior to the mayor election of 1995" does not constitute direct evidence of intentional discrimination. This general statement does not speak directly to whether Chief Burge intended to discriminate against Overton when Burge took the specific actions that he did. Mayor Graves was neither the City's Mayor nor Chief of Police during the time period in question; therefore, he was not involved in allegedly discriminatory decisions and cannot offer direct evidence of what the decision maker's state of mind was.

 Having found that Overton has not offered direct evidence of discriminatory intent, the court will consider whether Overton has presented sufficient circumstantial evidence to establish a case of intentional discrimination. Circumstantial evidence is evi-dence which provides a basis for drawing an inference of intentional discrimination. *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994). The Seventh Circuit has recognized three different types of circumstantial evidence of intentional discrimination. *Id.* These are

"(1) a mosaic of evidence which, taken together, would permit a jury to infer discriminatory intent; (2) comparative evidence showing that employees similarly situated to the plaintiff other than in the protected characteristic received systematically better treatment; and (3) pretext evidence, where the plaintiff is qualified for and fails to receive the desired treatment, and the employer's stated reason for the difference is unworthy of belief."

*Kennedy,* 140 F.3d at 724–25 (quoting *Piraino v. International Orientation Resources, Inc.,* 84 F.3d 270, 274 (7th Cir.1996)). "The mosaic of evidence which permits an inference of discriminatory intent usually consists of 'ambiguous statements, suspicious timing, discrimination against other employees and other pieces of evidence nonconclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff.'" *Kennedy,* 140 F.3d at 725.

 In this case, Overton has presented a mosaic of circumstantial evidence which, when viewed in the light most favorable to Overton, would permit a jury to infer discriminatory intent with respect to certain of the adverse employment actions that Overton suffered. This evidence consists of the following: (1) Graves' testimony that Chief Burge and Mayor Johnson stated on more than one occasion that the City was a "black town" and they wanted an "all black" police force; (2) the evidence that seventeen of the nineteen officers fired during a one-year period during the Burge/Johnson administration were white even though only ⅓ of the Department's officers were white; (3) the testimony of Mayor Graves that anyone who was white when Johnson was the City's Mayor was discriminated against; (4) the evidence that Overton was not promoted to sergeant even though he received the highest score on the 1993 sergeant's exam while non-white officers who did not pass the exam

were promoted to sergeant; (5) the evidence that Overton was denied light duty and prevented from working despite the recommendation of the City's doctor; and (6) the evidence that Overton was not allowed to return to duty until April 19, 1995 without cause even though he was physically able to perform the job. A juror who believed the above evidence could reasonably infer that Overton suffered the adverse employment actions that he did during the Burge/Johnson administration because he was white. Thus, Overton has presented circumstantial evidence sufficient to defeat the City's motion for summary judgment insofar as his Title VII claim is based on those adverse employment actions that occurred during the Burge/Johnson administration.

 The circumstantial evidence which Overton has presented, however, does not support his claim that he was subjected to continued harassment after he returned to work on April 19, 1995 and that he was constructively discharged from the Department in June of 1997 because of his race. These actions occurred after Burge stopped working for the Department and after Hardiman replaced Johnson as the City's Mayor. Overton has presented no evidence from which a juror could infer that racial discrimination continued to occur after April of 1995, *i.e.,* after the Burge/Johnson administration ended. There is no circumstantial evidence that acting Chief, and later Deputy Chief, Barton acted discriminatorily. Thus, Overton has failed to establish under the direct method that he suffered the adverse employment actions which occurred after April 19, 1995 because he was white.

 While Overton has presented sufficient evidence to defeat the City's motion for summary judgment, he is not entitled to summary judgment on his Title VII claim. The City has presented evidence which, when viewed in the light most favorable to the City, would permit a jury to find that Overton was not discriminated against because he was white. This evidence includes the following: (1) Chief Burge's testimony that he never stated that he wanted an all-black police department and that he never said that he wanted to run white officers out of the department; (2) several officers' testimony that they never heard Chief Burge say that

he wanted an all-black police force; (3) Overton's admission that disciplinary actions had been taken against him prior to his being reassigned to patrol; (4) the fact that it was common for officers to move back and forth between assignments; (5) evidence that only the results from the written portion of the 1993 sergeant's exam were posted and that the final results were never posted; (6) several white officers' testimony that they had never been discriminated against; (7) the fact that house checks were made on all individuals who called in sick and have been made on black officers' homes; and (8) evidence that during the period of January 1, 1993 through April 1, 1995, twenty-nine officers left the Department, eleven of whom were black, three of whom were Hispanic, and fifteen of whom were white. This evidence controverts Overton's circumstantial evidence of discriminatory intent. Thus, a juror who believed this evidence could find that Overton has failed to prove discriminatory intent.

In sum, neither party is entitled to summary judgment on Overton's Title VII claim insofar as it is based on the adverse employment actions which Overton suffered prior to April 19, 1995. Overton has presented sufficient circumstantial evidence which, if believed by a juror, would permit the juror to infer discriminatory intent. On the other hand, the City has presented evidence which, if believed by a juror, would contradict Overton's circumstantial evidence and would allow the juror to find that Overton has failed to prove discriminatory intent. Overton, however has failed to prove under the direct method that he suffered the adverse employment actions that he did after April 19, 1995 because he was white. Accordingly, the City is entitled to summary judgment on Overton's claim insofar as it is based on those actions unless he can present a case of discrimination under the indirect, burden-shifting method.

**b. The indirect method of establishing a case of discrimination**

In this section, the court will address whether Overton has established a case of discrimination under the indirect, burden-

shifting method with respect to those adverse employment actions which occurred after April 19, 1995. Under the indirect, burden-shifting method, the plaintiff may raise an inference of discrimination by offering sufficient evidence to establish a prima facie case. *Pafford,* 148 F.3d at 665. To establish a prima facie case of racial discrimination, the plaintiff must show that (1) he is in a protected class; (2) he was performing his job satisfactorily; (3) he nonetheless suffered an adverse employment action; and (4) other similarly situated employees outside his race were treated more favorably. *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 444 (7th Cir.1997).

If plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Pafford,* 148 F.3d at 665. If the employer meets its burden, then the burden shifts back to the plaintiff to produce " 'evidence that would, if believed by a trier of fact, show that the true reason for the employment action was discriminatory.' " *Id.* (quoting *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1169 (7th Cir. 1998)). The ultimate burden of proving discriminatory intent remains on the plaintiff at all times. *Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1032 (7th Cir. 1998).

In this case, Overton has failed to establish a prima facie case. Specifically, Overton has failed to prove that other similarly situated officers who were black were treated more favorably. Overton complains that after he returned to active duty on April 19, 1995, he (1) was assigned to and remained as investigator in Internal Affairs because he had no uniforms; (2) was not given a working vehicle to perform his duties in Internal Affairs; (3) was not allowed to work overtime; (4) was the only officer required to punch in and out on a time clock and to notify the Chief's secretary when he was leaving; and (5) was advised that he had no future with the Department and that he should seek employment elsewhere. While all of this may be true, however, Overton makes no effort to prove that a similarly situated officer who was not white was treated more favorably. This lack of comparison evidence (in the absence of either direct or circumstantial evidence of discriminatory intent) dooms his claim insofar as it is based on those adverse employment actions that occurred after April 19, 1995. Accordingly, summary judgment is granted insofar as Overton's Title VII claim is based on the adverse employment actions that occurred after April 19, 1995.

### c. The release

The City next moves for summary judgment on Overton's claim for compensatory damages, arguing that the release that Overton signed obviates his claim for compensatory damages. Overton opposes the motion, arguing that (1) the language of the release is not sufficiently broad to encompass Overton's claim for compensatory damages related to his discrimination claim and (2) he signed the release under economic duress.

Before addressing Overton's claim of economic duress, the court must address whether the release covers Overton's Title VII claims. Determining whether the release covers Overton's Title VII claim is a matter of contract interpretation. *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 456 (7th Cir.1991). In interpreting the terms of release, the court must engage in a two-part inquiry. *Id.* First, the court must look at the plain language of the contract. *Id.* If the contract's language is ambiguous, the court must go on to declare the contract's meaning. *Id.* If the court finds that the contract's language is ambiguous and that extrinsic evidence is undisputed, the interpretation of the contract is a question of law for the court to decide. *Baker v. America's Mortgage Servicing, Inc.,* 58 F.3d 321, 326 (7th Cir.1995). If the court finds that the contract's language is ambiguous and the parties dispute the extrinsic evidence, then "a fact-finder must be called upon to determine the intent of the parties." *Id.* In interpreting all contracts, the most important concern is giving effect to the parties' intent. *Church v. General Motors,* 74 F.3d 795, 799 (7th Cir.1996).

In this case, the release signed by Overton is ambiguous as to whether it includes Overton's Title VII claim. The release that Overton signed reads as follows:

I, William Overton, have received a check in the amount of $18,870.88 for accumulated time accrued on the books of the Harvey Police Department.

Thereby releasing the Harvey Police Department from any further obligation, as to any time due me.

I agree that I have received all money owed to me by the Harvey Police Department.

The release does not expressly state that it includes Overton's claim of discrimination. In fact, the release makes no mention whatsoever of Overton's actual or possible claims or causes of action. One could argue that the "accumulated time accrued on the books" language shows that Overton's Title VII claim was not included. Another could argue that the "I have received all money owed to me" language shows that Overton's Title VII claim was included. Neither of the parties, however, has offered any extrinsic evidence as to whether the parties intended for the release to cover Overton's Title VII claim. Accordingly, the court finds that there is not sufficient evidence before it to determine whether the parties intended for the release to include Overton's Title VII claim and, thus, denies the City's motion for summary judgment on Overton's compensatory damages.

### d. Overton's failure-to-promote claim

The City next moves for summary judgment on Overton's Title VII claim for failure to promote, arguing that Overton has failed to prove that any less qualified, non-white individual was promoted before him. Overton argues that this is not a separate claim but is only one of many discriminatory acts that were taken against him while he was a Department officer. Overton also argues that he has shown evidence that less qualified, non-white officers were promoted to sergeant before him.

■ The court finds that Overton has submitted sufficient evidence to raise a genuine issue of fact as to whether less qualified, non-white officers were promoted to sergeant before him. At his deposition, Overton testified that (1) he achieved the highest score on the October 1993 sergeant's exam; (2) despite receiving the highest score on the exam, he was not promoted to sergeant while other non-white officers who did not pass the exam were promoted to sergeant; and (3) these non-white officers were Lee Gray, Martha Barner, Larry Patterson, and Chief Burge. In her deposition, Barner admits that she was promoted to sergeant sometime in either 1993 or 1994. (Barner Dep. at 24.) This evidence is sufficient to raise a genuine issue of fact as to whether less qualified, non-white officers were promoted to sergeant. Accordingly, the court denies the City's motion for summary judgment on this issue.

### e. Overton's claims of retaliation and constructive discharge

The City has also moved for summary judgment on Overton's claims for retaliation and constructive discharge which are based on actions that occurred after April 19, 1995, arguing that Overton has failed to come forward with evidence to support these claims. Overton responds that he has made no separate claim for retaliation. The court need not address this issue, however, because the court has already granted summary judgment on Overton's Title VII claim insofar as it is based on actions that occurred after April 19, 1995. *See supra* Part II.3.a–b.

### III. *CONCLUSION*

For the foregoing reasons, the court grants in part and denies in part the City of Harvey's motion to strike. Accordingly, the court enters the following orders:

1. The court denies the City of Harvey's motion to strike exhibits 9, 10, 11, 12, 15, 21, 22, 24, 26 and 35.

2. The court grants the City of Harvey's motion to strike exhibits 5, 6, 13, 14, 16, 17, 20, 23, 25, 27, 28, 30, 31, 32, 33, 34, 36, and 39, paragraphs 10, 30, and 31 of Overton's 12(M) Statement, and all references in Overton's briefs to these exhibits and paragraphs.

3. The court strikes exhibit J of the City of Harvey's motion for summary judgment.

4. The court grants in part and denies in part the City of Harvey's motion for summary judgment. The City's motion is granted insofar as Overton's claims are based on events that occurred after April 19, 1995. The City's motion is otherwise denied.

5. The court denies William Overton's motion for summary judgment.