**In re Richard SHARIF, Debtor.**

**No. 09 B 05868.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 9, 2011.

As Amended March 10, 2011.

854

Gina B. Krol, Cohen & Krol, Chicago, IL, for Wellness Intern. Networks, Ltd.

Ean L. Kryska, SmithAmundsen LLC, Chicago, IL, for Horace Fox, Jr.

Garrett S. Reidy, Westchester, IL, for Soad Wattar Revocable Living Trust of 1992, Ragda Sharifeh.

William Stevens, William J. Stevens, Lakeside, MI, for Richard Sharif.

Bruce E de'Medici, Belongia, Shapiro & Franklin, LLP, Chicago, IL, for Horace Fox, Jr., for Bruce de'Medici.

## ORDER ON PETITION TO INTERVENE ON BEHALF OF THE SOAD WATTAR REVOCABLE LIVING TRUST OF 1992 AND RAGDA SHARIFEH (Dkt. 68)

JACQUELINE P. COX, Bankruptcy Judge.

Ragda Sharifeh claims to be both the successor trustee and the successor beneficiary of the Soad Wattar Revocable Living Trust of 1992 ("Soad Wattar Trust"). In those capacities and on her own behalf she asks pursuant to Federal Rule of Bankruptcy Procedure 2018 that she be allowed to intervene in this matter as to the following two orders: the July 6, 2010 order (dkt. no. 53) where this court held that the Soad Wattar Trust was the *alter ego* of the

Debtor, Richard Sharif, and the August 5, 2010 order (dkt. no. 63) directing Wells Fargo Financial Advisors to turn over assets held in the name of the Soad Wattar Trust to Horace Fox, Jr., in his capacity as the Trustee of the Debtor's bankruptcy estate.

## I. Background

Prior to filing his chapter 7 petition, the Debtor, Richard Sharif, was involved in litigation in the Federal District Court for the Northern District of Texas. The Debtor and several other parties filed a complaint on July 8, 2005 against Wellness International Network, Ltd.; WIN Network, Inc.; Ralph Oats; Cathy Oats and Sheri Matthews (collectively "WIN") in the United States District Court for the Northern District of Texas asserting fraud, RICO and other claims, seeking damages of nearly $1 million. Amended Complaint Objecting to Discharge, Case No. 09 B 05868, Adversary Proceeding No. 09–00770, dkt. no. 10, at p. 2 (the "Am. Compl."). The Debtor and his co-plaintiffs did not initiate discovery in that action and did not cooperate with WIN's efforts to obtain discovery. *Id.* The Debtor and his co-plaintiffs had admissions deemed against them for their failure to respond to discovery requests. WIN moved for summary judgment on the ground that the admissions negated all claims asserted; the Debtor and his co-plaintiffs failed to introduce any evidence in support of the claims. *Id.* The district court granted summary judgment against the Debtor Richard Sharif and his co-plaintiffs on those grounds. *Id.* The Debtor and his co-plaintiffs appealed the entry of summary judgment to the Fifth Circuit in 2007. *Id.* The Fifth Circuit affirmed all of the district court's rulings and noted:

A review of the record on appeal demonstrates that Appellants' untimely per-

formance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of nonperformance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for the reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Id.* at 2–3 (citing *Sharif v. Wellness Int'l Network, Ltd.*, 273 Fed.Appx. 316, 317, 2008 U.S.App. Lexis 7483, at *2 (5th Cir. 2008)). On remand the district court awarded WIN attorneys' fees in the amount of $655,596.13 as a sanction against the Debtor and his co-plaintiffs. *See* Order on Mot. for Civil Contempt, Civil Action No. 3:05–CV–01367–B, dkt. no. 180 at p. 1, District Court for the Northern District of Texas, Dallas Division. The Debtor was served with post-judgment discovery and document requests. *Id.* The Debtor never complied with WIN's discovery requests. *Id.*

WIN filed a Motion to Compel post-judgment discovery on October 13, 2008; the motion was granted on November 19, 2008; the Texas district court ordered the Debtor to respond to outstanding discovery requests. *Id.* at 1–2. Despite the district court's order compelling the Debt-

or to comply with discovery requests, the Debtor did not respond to such requests nor did he appear for his deposition. *Id.*

On December 4, 2008, WIN filed a Motion for Civil Contempt against the Debtor for violating the Texas court's order on the Motion to Compel. *Id.* At a show cause hearing on January 13, 2009, at which the Debtor did not appear, the Texas court found clear and convincing evidence that he had violated several court orders compelling him to comply with outstanding discovery requests and the order to appear at the January 13, 2009 show cause hearing. *Id.* at 3. On February 10, 2009 the Texas court held the Debtor in civil contempt for discovery violations. He was ordered to respond to post-judgment discovery and to reimburse WIN for attorneys' fees and costs incurred to prepare and file the motion to compel and the motion for civil contempt. *Id.* at 3–5. On February 24, 2009, two weeks after the Texas court's contempt ruling, the Debtor filed the instant bankruptcy case.

On August 24, 2009, Wellness International Network, Ltd., Ralph Oats and Cathy Oats ("the WIN Plaintiffs") filed adversary proceeding 09–00770 asking the court to deny Debtor a discharge pursuant to 11 U.S.C. § 727. Count I of the amended adversary complaint, 09–00770, dkt. no. 10, alleges in part that the Debtor has "continuously concealed property that he admitted under penalty of perjury that he owned by claiming that such property is currently owned by the Soad Wattar Living Trust" in violation of 11 U.S.C. § 727(a)(2)(A). Am. Compl. ¶ 20. The WIN Plaintiffs also allege that the Debtor was the Trustee of the Soad Wattar Trust, exercised complete control over the trust, and held out the assets of the trust as his own. Am. Compl., ¶ 21.

Count II alleges in part that "the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information" in violation of 11 U.S.C. § 727(a)(3). *Id.* at ¶¶ 24–25.

Count III alleges in part that he "knowingly and fraudulently, in or in connection with the case made a false oath or account" in violation of 11 U.S.C. § 727(a)(4)(A). Am. Compl., ¶¶ 27–28. Specifically, the WIN Plaintiffs assert that the Debtor failed to disclose companies in which he was an officer within the past 6 years despite the fact that the bankruptcy petition requires the Debtor to disclose all businesses in which he was an officer, director, partner or managing executive of a corporation during the past 6 years. The Debtor did not disclose any businesses in response to this query. *See* Statement of Financial Affairs ("SOFA"), Voluntary Chapter 7 Bankruptcy Petition (the "Petition"), Case No. 09 B 05868, dkt. no. 1 at p. 29, ¶ 18.

Count IV alleges that the Debtor failed to explain the loss of $5 million in assets that he claimed to own in a 2002 Washington Mutual Bank, N.A. Loan Application (the "Loan Application") in violation of 11 U.S.C. § 727(a)(5). Am. Compl., ¶ 32. The assets listed in the Loan Application included the following: (1) Logan Square MRI Center; (2) Sharif Pharmacy; (3) Hermosa Medical Center; (4) three Banco Popular Accounts containing $90,000, $40,000 and $50,000, respectively; (5) $1,400,000 in a 401(k) retirement fund; and (6) $1,400,000 in real estate (collectively, the "Loan Application assets"). *See* Loan Application, Adversary Proceeding 09–00770, dkt. no. 17–1. The Debtor later claimed at his 2004 examination that he did not own any of the property that he claimed to own in the Loan Application. May 13, 2010 Transcript of Debtor's 2004 Examination, Adversary Proceeding 09–00770, Ex. 59 at 60–61. He has failed to explain the loss or disposition of the $5 million of assets in issue.

Count V seeks a declaratory judgment that the Soad Wattar Trust is the *alter ego* of the Debtor because the Debtor exercises complete control over the trust, resulting in the unity of interest between the Debtor and the trust such that separate personalities do not exist. Count V also alleges that to the extent that the Loan Application assets have been transferred into the trust, the trust is organized and operated as a mere tool or business conduit of the Debtor. Am. Compl., ¶ 35.

On April 15, 2010, the WIN Plaintiffs filed a Motion for Sanctions, Costs and Fees, and in the alternative, a Motion to Compel, Motion for Costs and Fees, and Motion to Modify Scheduling Order (hereinafter the "Sanctions Motion"), Adversary Proceeding 09–00770, dkt. no. 39. The court held a hearing on the Sanctions Motion on April 21, 2010. The WIN Plaintiffs argued that the Debtor had failed to comply with discovery requests and missed discovery deadlines for document production and responding to interrogatories. On April 21, 2010 an order was entered compelling the Debtor to comply with all outstanding discovery by April 28, 2010 or risk an order of default being entered against him. The hearing on the Sanctions Motion was continued to April 28, 2010.

On April 28, 2010, the WIN Plaintiffs reported that the Debtor had produced some documents along with certain interrogatory responses on the afternoon of April 27, 2010. The hearing was continued to May 24, 2010 to allow the WIN Plaintiffs time to assess whether the Debtor's document production and interrogatory responses were in compliance with the April 21, 2010 order compelling the Debtor to comply with all outstanding discovery re-

quests. At the hearing on May 24, 2010, the WIN Plaintiffs proved that the Debtor had not fully complied with discovery requests and should be sanctioned. *See* May 24, 2010 Transcript of Sanctions Hearing, *Wellness International, Ralph Oats and Kathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust,* Adversary Proceeding 09–00770, dkt. no. 99 at 4 ("May 24, 2010 Hearing Transcript").

## II. Debtor Failed to Sign or Verify His Interrogatory Responses

Federal Rule of Civil Procedure 33(b), applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7033, requires in relevant part that:

(1) ... [I]nterrogatories must be answered:

(A) by the party to whom they are directed; or

(B) if that party is a public or private corporation, a partnership, an association, or a governmental agency, by any officer or agent, who must furnish the information available to the party.

(3) ... Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.

(5) ... The person who makes the answers must sign them, and the attorney who objects must sign any objections.

Fed.R.Civ.P. 33(b)(1),(3) and (5). The Seventh Circuit Court of Appeals and the United States District Court for the Northern District of Illinois have determined that under Rule 33, answers to interrogatories must be verified and signed by the person answering the interrogatory, not only by the party's attorney. *See, e.g., Hindmon v. Natl.-Ben Franklin Life Ins. Corp.,* 677 F.2d 617, 619 (7th Cir.1982) (observing that interrogatory answers signed by an attorney and not the party violated "the clear mandate of Federal Rule of Civil Procedure 33(a)"); *accord Overton v. City of Harvey,* 29 F.Supp.2d 894, 901 (N.D.Ill.1998) (striking as summary judgment exhibit plaintiff's unverified answers to interrogatories signed only by attorney).

The Debtor's interrogatory responses as Trustee of the Soad Wattar Trust were signed by the Debtor, however, they were not made under oath. *See* May 24, 2010 Hearing Transcript at 6; Richard Sharif's Answers to Interrogatories as Trustee of the Soad Wattar Revocable Living Trust, Hearing Ex. No. 3 at p. 9 ("Sharif Trustee Interrog. Answers"). Similarly, the Debtor's individual interrogatory responses, which were signed by Debtor's attorney, were not answered under oath. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, May 24, 2010 Hearing Transcript, Ex. No. 4 at 9 ("Sharif Individual Interrog. Answers"); May 24, 2010 Hearing Transcript at 6. Those responses should have been signed under oath by the Debtor as required by Fed. R.Civ.P. 33(b).

The Debtor was not present at the hearing; his attorney did not explain why the interrogatory responses were not signed under oath as required.

## III. Debtor's Failure to Provide Documents Requested by the WIN Plaintiffs and the Bankruptcy Trustee

The WIN Plaintiffs asserted that the Debtor repeatedly failed to produce numerous documents requested by them in requests for production and by the Trustee at the section 341 creditors meeting ("creditors meeting"), despite this court's April 21, 2010 order compelling the Debtor to comply with all outstanding discovery requests.

### 1. Washington Mutual Loan Application and Related Documents

During the Debtor's initial creditors meeting ("creditors meeting") on March 25, 2009, the WIN Plaintiffs and the Bankruptcy Trustee requested that the Debtor provide documents relating to the Loan Application assets that he claimed were his. The creditors meeting was continued to April 21, 2009 to allow the Debtor additional time to gather documents related to the Loan Application assets. *See* Sanctions Motion at p. 5, 09 B 05868, Adversary Proceeding 09–00770, dkt. no. 38, p. 7 ("Sanctions Motion"). When the Debtor appeared at the continued creditors meeting he did not provide the Bankruptcy Trustee or the WIN Plaintiffs with the requested documents; he asserted that none of the Loan Application assets belonged to him. *Id.* The Debtor asserted that the Soad Wattar Trust owned all of the Loan Application assets, that he was the Trustee of the trust, and that he lied when he represented that he owned those assets. *Id.*

Pursuant to Federal Rule of Bankruptcy Procedure 2004, on motion of any party in interest, the court may order the examination of any entity. At a Rule 2004 examination ("2004 examination") of the Debtor, he confirmed under oath that he testified at the section 341 creditors meeting that he lied in the Loan Application:

Q: The third sentence [of Debtor's answer to the Amended Adversary Complaint states], defendant testified at the 341 meeting that he lied on the loan application, that he did not own any of the real estate listed in the loan application, and that this property is owned by Soad Wattar Trust, his mother or sister. Do you see that statement? I'd be glad to orient you if you—

A: Yeah. Is that by the Answer, defendant admits?

Q: Uh huh.

A: Yeah. That on April '09—okay.

Q: Is that a true statement?

A: Yes, yeah.

May 13, 2010 Rule 2004 Examination of Richard Sharif, *Wellness International, Ralph Oats, and Cathy Oats v. Richard Sharif, Individually and as Trustee of the Soad Wattar Trust,* Adversary Proceeding 09–00770, Ex. No. 59 at 60–61 ("Transcript of Debtor's 2004 Examination"). *See* also Defendant's Answer to Amended Complaint, dkt. no. 23, p. 8, 09 B 05868, Adversary Proceeding 09–00770.

Based upon the Debtor's assertion that the Soad Wattar Trust owned the assets listed in the Loan Application, the WIN Plaintiffs and the Bankruptcy Trustee requested documents relating to the formation and funding of the trust and documents evidencing ownership or transfer of the Loan Application assets. *See* Sanctions Motion at p. 7. The creditors meeting was continued to June 3, 2009 to give the Debtor time to provide the requested documents. At the June 3, 2009 creditors meeting the Debtor failed to provide any of the requested documents. Sanctions Motion at p. 7.

Subsequent to the Debtor's refusal to provide the documents at his second and third creditors meetings, the Debtor brought a *Motion for Protective Order* requesting that he be granted leave to tender documents relating to the Loan Application and the Soad Wattar Trust under a protective order to prevent disclosure of information to the Debtor's creditors and their attorneys. *See* 09 B 05868, dkt. no. 23. The Debtor's Motion for Protective Order was denied on June 11, 2009. *See* 09 B 05868, dkt. no. 25. Despite this court's denial of Debtor's Motion for Protective Order, he never tendered any docu-

ments relating to the Loan Application assets, prompting the Bankruptcy Trustee to file a Motion for Turnover of Documents from Richard Sharif to Horace Fox, Jr. on October 20, 2009. *See* 09 B 05868, dkt. no. 40. The court granted that motion on October 27, 2009 (09 B 05868, dkt. no. 42). To date the Debtor has failed to comply with this court's order to turn over the required documents to Horace Fox, Jr., the trustee of his bankruptcy estate. *See* Sanctions Motion at p. 6.

The WIN Plaintiffs filed a document request seeking the Loan Application assets. *See* Richard Sharif's Response to Plaintiffs' First Request for Production of Documents, Hearing Ex. No. 1, ¶¶ 15–22 ("Sharif Production Responses"). The Debtor failed to produce documents relating to the Loan Application assets.

## 2. Richard Sharif Revocable Trust Documents

The WIN Plaintiffs asserted that the Debtor failed to disclose information and documents relating to the Richard Sharif Revocable Trust despite interrogatory and production requests requiring him to do so.

The Debtor listed the Richard Sharif Revocable Trust in his Petition as property owned by another person that he controls. *See* Statement of Financial Affairs, ("SOFA") 09 B 05868, dkt. no. 1, p. 27. Based on this disclosure, the WIN Plaintiffs' interrogatories requested that the Debtor identify each trust for the benefit of others that the Debtor created or contributed to in the last five years. *See* Richard Sharif's Answers to Plaintiffs' First Request for Interrogatories, May 24, 2010 Hearing Ex. 4, pp. 8–9, ¶ 11; Richard Sharif's Response as Trustee to Plaintiffs' First Request for Production of Documents, May 24, 2010 Hearing Transcript, Ex. No. 2 at p. 2, ¶ 11 ("Sharif Trustee Production Responses"). The Debtor re-

sponded to the interrogatory with the answer "none," which is wholly inconsistent with the Debtor's SOFA disclosure of the Richard Sharif Revocable Trust on page 27 and his admission that he was the Trustee of the Soad Wattar Revocable Living Trust of 1992. *See* Sharif Individual Interrog. Answers at p. 8, ¶ 11; May 24, 2010 Hearing Transcript at 9; SOFA, ¶ 14.

The WIN Plaintiffs also requested that the Debtor produce all documents referencing or evidencing any assets held in trust in which the Debtor claims or has an interest. Sharif Production Responses at ¶ 42 and Sharif Trustee Production Responses at ¶ 42. Again, despite Debtor's acknowledgment of having an interest in the Richard Sharif Revocable Trust in his sworn bankruptcy schedules (*See* SOFA at p. 27), the Debtor failed to produce any documents relating to the trust. May 24, 2010 Hearing Transcript at 9–11.

## 3. Bank Statements and Financial Records

The WIN Plaintiffs asserted that the Debtor failed to produce bank statements and account records relating to financial transactions involving Richard Sharif individually and the Soad Wattar Trust. The Plaintiffs requested that the Debtor produce documents evidencing any account at a financial institution in which the Debtor is a designated signatory. Sharif Trustee Production Responses at p. 7, ¶ 44; Sharif Production Responses at p. 7–8, ¶ 44. The Debtor failed to produce any documents responsive to these requests and instead listed the names and addresses of three financial institutions with corresponding account numbers. *See* Sharif Production Responses at p. 7, ¶ 44; Sharif Trustee Production Responses at p. 7, ¶ 44; May 24, 2010 Hearing Transcript at 11.

The WIN Plaintiffs also requested that the Debtor produce documents relating to

any checking, savings, money market, passbook, demand deposit, negotiable order of withdrawal or trust account in which the Debtor had any interest. Sharif Trustee Production Responses at p. 8, ¶ 49; Sharif Production Responses at p. 8, ¶ 49. The Debtor failed to produce any documents responsive to this request, even though he had a personal account with JP Morgan Chase Bank. He acknowledged his lack of compliance during his 2004 examination. Transcript of Debtor's 2004 Examination at 166. May 24, 2010 Hearing Transcript at 11–12.

During their investigation, the WIN Plaintiffs independently discovered numerous documents that the Debtor failed to produce relating to assets held at A.G. Edwards in which the Debtor had an interest. The WIN Plaintiffs discovered account statements from A.G. Edwards for September and October of 2003 in the name of Soad Wattar, the Debtor's mother, and Richard Sharif as joint tenants. A.G. Edwards & Sons, Inc. Account Statements, Ex. No. 61 to 2004 Examination of Debtor ("A.G. Statements"). These account statements revealed that approximately $752,050 in assets were held in joint tenancy by Soad Wattar and Richard Sharif. *See* A.G. Edwards Statements. In his Rule 2004 examination the Debtor admitted that while he had documents relating to this A.G. Edwards account, he did not produce them. Transcript of Debtor's 2004 Examination at 172–173. The Debtor also stated that the assets in this A.G. Edwards account were transferred to Wachovia Bank, but the Debtor failed to produce any transfer documents. Transcript of Debtor's 2004 Examination at 174–176. The Debtor also failed to disclose the A.G. Edwards accounts in his bankruptcy petition. *See* Petition, dkt. no. 1, pp. 9–13, Schedule C of Personal Property and Schedule D of Property Claimed as Exempt.

The WIN Plaintiffs discovered a Trans-America Triple Advantage VA variable annuity held at A.G. Edwards for the benefit of the Debtor and his sister, Ragda Sharifeh, as joint tenants, with a valuation of $39,248. May 24, 2010 Hearing Transcript at 22–23. Once again, the Debtor failed to provide information relating to this annuity despite receiving interrogatories and document requests requiring him to do so. May 24, 2010 Hearing Transcript at 22. At his 2004 examination the Debtor was unable to say where that money went. Transcript of Debtor's 2004 Examination at 178–179.

The WIN Plaintiffs estimate that approximately $912,000 in assets were held at A.G. Edwards for the benefit of the Debtor individually or jointly with his mother or his sister, yet the Debtor provided no information or documentation regarding the A.G. Edwards accounts. May 24, 2010 Hearing Transcript at 24.

The Debtor also failed to provide information or documentation evidencing other accounts that he admitted to having an interest in at his 2004 examination. May 24, 2010 Hearing Transcript at 26–31. The Debtor admitted the existence of a Soad Wattar Trust account at Banco Popular. During his 2004 examination, he admitted his failure to produce documents about various accounts:

1) Q: Sir, I'm just asking. You have not given me one single account statement for the trust [at Banco Popular], have you?

A: Account statement?

Q: Yes.

A: You mean, from like the investment firm?

Q: Yes.

A: There are boxes available. These are, you know—

Q: You have not provided us a single account statement, have you?

A: I did not. Again, I did not know that you needed that one. If not, it's available. You have that.

2) Q: Where are there accounts besides Banco Popular?

A: Banco Popular, absolutely, and whatever you need from Wells Fargo, I'll provide you with it.

Q: I'm just asking for the names of the companies—Wells Fargo and who else?

A: Wells Fargo, Wachovia, which is now Wells Fargo, has a mortgage payment for the house because it comes out of the mother's living trust every month. This is two—three. What else?

Q: Any investment firms like Smith Barney or Morgan Stanley? I'm just throwing out people that I can think of.

A: There is one she [Debtor's mother] has an account with Raymond James, since 2005, one account. I just remembered this. I believe that's all I know right now.

Transcript of Debtor's 2004 Examination at 107–109.

3) Q: I'm not asking how much you use it. I'm asking why have you not produced to me the JP Morgan Chase account statements as requested in discovery?

A: Counsel, I did list the only account that I have. I'm sorry if I didn't produce the statement available. I know there's a question, Counselor, that I need to reproduce because my lawyer would have told me to produce it. I went by the name of the bank and my account but—

Transcript of Debtor's 2004 Examination at 143–144.

### 4. Conveyance, Disposal, or Transfer of Asset Documents

The WIN Plaintiffs asserted that the Debtor failed to provide information relating to the conveyance, disposal, or transfer of certain assets in which the Debtor once claimed an interest. At his 2004 examination the Debtor admitted that he once owned a 10% interest in the Logan Square MRI & Diagnostic Center, Inc. ("Logan Square") and that he had relinquished it. *See* Transcript of Debtor's 2004 Examination at 96. However, the Debtor never provided information or documentation evidencing the disposition of his interest in Logan Square; he admitted this at the 2004 examination despite having received the WIN Plaintiffs' interrogatories and requests for production inquiring about the disposition of his interest in Logan Square. *See* Transcript of Debtor's 2004 Examination at 96.

At that 2004 examination the Debtor denied ever having an ownership interest in Sharif Pharmacy (Transcript of Debtor's 2004 Examination at 61). However, the Debtor represented in a 2002 Internal Revenue Service income tax return that he was the 100% owner of Sharif Pharmacy. *See* Transcript of Debtor's 2004 Examination at 68. After the Debtor was confronted with the inconsistency between his testimony and his 2002 income tax return, he testified that he does not examine his tax returns because his accountant does and that he does not understand them. *Id.* at 69. The Debtor testified that he held a 10% ownership interest in Sharif Pharmacy and that the 100% figure listed on his tax return was an error. *Id.* at 68. Whether the Debtor's ownership interest in Sharif Pharmacy was 10%, 100%, or zero as testified to on page 61 of his 2004 examination, he admitted at his 2004 examination that he produced no documentation evidencing

the transfer of stock in Sharif Pharmacy, acknowledging his failure to comply with his obligation to disclose information about his financial affairs. *See* Transcript of Debtor's 2004 Examination at 72. The Debtor also admitted that he asked the office manager of Sharif Pharmacy for responsive documents from 1992 through the present but did not undertake other efforts to obtain those documents. *Id.* at 86–87.

### 5. Corporate Records

The WIN Plaintiffs asserted that the Debtor failed to produce corporate records for Sharif Pharmacy and Hermosa Medical Center after 2006. The WIN Plaintiffs' discovery requests specifically designated corporate records for Sharif Pharmacy and Hermosa Medical Center as documents for production. The Debtor never produced the requested documents even after this court's April 21, 2010 order compelling the Debtor's compliance with all outstanding discovery requests. May 24, 2010 Hearing Transcript at 34–37.

### 6. Documents Evidencing the Formation and Funding of the Soad Wattar Trust

The WIN Plaintiffs asserted that the Debtor failed to produce documents relating to the formation and funding of the Soad Wattar Trust. May 24, 2010 Hearing Transcript at 38. The WIN Plaintiffs argued that these documents are critical because the Debtor testified that the assets he once claimed as his own were actually assets of the trust.

The requests for production required the Debtor to produce documents establishing and funding the Soad Wattar Trust, evidencing the transfers of assets into the trust, and all other documents related to assets held in the trust. *See* Sharif Trustee Production Responses, Hearing Ex. No. 2 at ¶¶ 27, 45–46, 49–50; May 24, 2010 Hearing Transcript at 38–41. The WIN

Plaintiffs specifically requested all deeds, records, titles, or other documents that related to assets in the name of the Soad Wattar Trust from 2002 to the present. Debtor alleges that the Trust was funded with a $2,000,000 inheritance from his deceased father that came from an international wire transfer from Beirut, Lebanon through a financial entity in Dubai. Transcript of Debtor's 2004 Examination at 109. However, the Debtor also admitted that he did not have any of the documents evidencing the wire transfers in his possession and that he had not produced such documents to the WIN Plaintiffs. Transcript of Debtor's 2004 Examination at 109–111. The Debtor also admitted that except for one asset, the Revere house, he failed to produce any documents showing transfers of assets into the Soad Wattar Trust from 1992 to the present. *See id.* at 104–105. The Debtor has failed to produce documentation relating to the formation and funding of the Soad Wattar Trust.

The WIN Plaintiffs also requested the 1992 trust instrument that established the Soad Wattar Trust. The Debtor admitted at his 2004 examination that he failed to produce the original trust instrument. Transcript of Debtor's 2004 Examination at 101.

A review of the Debtor's Statement of Financial Affairs reveals that he did not disclose that he was the Trustee of the Soad Wattar Trust. *See* SOFA, at ¶ 14, where only the Richard Sharif Revocable Trust was disclosed.

### 7. Signed Tax Returns and Documents Used to Prepare Debtor's Tax Returns

The WIN Plaintiffs asserted that the Debtor failed to produce signed tax returns or any of the underlying source documents used to prepare such tax returns. May 24, 2010 Hearing Transcript at 44.

While the WIN Plaintiffs did receive some federal and state tax returns from 2003–2008 from the Debtor, none of the returns received was signed. *See* May 24, 2010 Hearing Transcript at 44; Sharif Production Responses at ¶ 10 and Sharif Trustee Production Responses at ¶ 10. When the Debtor was questioned about the unsigned tax returns at his 2004 examination, he stated that he was 100% sure that the tax returns that went to the government were signed, but he did not produce any signed tax returns to the WIN Plaintiffs. *See* Transcript of Debtor's 2004 Examination at 130–131. The Debtor also stated that he did not attempt to obtain signed tax returns from the IRS. *Id.* at 130.

The Debtor also failed to produce the source documents used to prepare his tax returns and admitted the same at his 2004 examination. *See id.* at 135.

**8. Documents Evidencing Debts Owed to Debtor's Family Members**

The WIN Plaintiffs asserted that the Debtor failed to produce any documents underlying the debts that he owes to his family members. *See* Sharif Production Responses & Sharif Trustee Production Responses at ¶¶ 34–37; May 24, 2010 Hearing Transcript at 54. The Debtor's bankruptcy petition disclosed several debts owed to family members including the following: (1) $49,000 to Haifa Kaj, Debtor's sister; (2) $39,000 to Jamal Sharif, Debtor's brother; (3) $93,000 to Ragda Sharifeh, Debtor's sister; and (4) $90,000 to Soad Wattar, Debtor's mother. *See* Petition at dkt. no. 1, Schedule F, p. 17; May 24, 2010 Hearing Transcript at 55. Based on these disclosures in the Debtor's Schedule F, the WIN Plaintiffs requested that the Debtor produce documents referencing or evidencing debts owed to the above family members. *See* Sharif Production Responses, May 24, 2010 Hearing Ex. No. 1 at ¶¶ 34–37; Sharif Trustee Production

Responses, Hearing Ex. No. 2 at ¶¶ 34–37. The Debtor failed to produce any documents evidencing the debts he owes to his relatives and asserted that those debts were based on oral agreements. May 24, 2010 Hearing Transcript at 56. The WIN Plaintiffs contend, and the court agrees, that it is hard to believe that $271,000 was transferred as loans to the Debtor without documents such as wire transfer forms, bank statements, canceled checks, emails or enclosure letters being created.

**IV. Debtor's Response**

In response to the WIN Plaintiffs' assertions regarding the Debtor's noncompliance, the Debtor's attorney argued that while there may be some deficiencies in the Debtor's discovery responses, the Debtor made a good faith effort to comply with all discovery requests. May 24, 2010 Hearing Transcript at 75–76. Debtor's attorney pointed out that the Debtor was initially unable to meet the discovery deadlines because he was in Syria attending to his ill mother who subsequently passed away. May 24, 2010 Hearing Transcript at 68. When the court requested proof of the Debtor's whereabouts the Debtor's attorney produced airline tickets to Syria and a copy of the mother's death certificate. *Id.* This court does not believe, however, that the Debtor made a serious effort to comply with the WIN Plaintiffs' discovery requests both before and after his mother's death.

The Debtor's attorney argued that the WIN Plaintiffs' counsel never called him to object to the sufficiency of the discovery responses before filing the Sanctions Motion. May 24, 2010 Hearing Transcript at 68–69. According to him, the WIN Plaintiff's supplement to their Sanctions Motion did not contain the statement required by Northern District of Illinois Local Rule 37.2 certifying that the movant consulted with opposing counsel regarding the dis-

covery defects before filing a motion pursuant to Federal Rule of Civil Procedure 26. May 24, 2010 Hearing Transcript at 77–78. This court notes that a phone call would have been futile because the Debtor was so grossly out of compliance with his discovery obligations. The court notes that the attorney for the WIN Plaintiffs may have complied with Local Rule 37.2 as their Sanctions Motion includes a certification that he conferred with the Debtor's attorney about the relief sought in the Sanctions Motion before it was filed. Sanctions Motion at p. 14. The Debtor's counsel's complaint in this regard lacks specificity regarding which pleading lacks the required certification/statement of conference/consultation. See Rule 7037–1 of the Local Rules of the Bankruptcy Court for the Northern District of Illinois which includes a similar requirement.

The Debtor's attorney asserted that he produced additional documents after the Debtor's 2004 examination when he surmised, based on the questions that were posed to the Debtor, that the WIN Plaintiffs wanted more documents. The Debtor's attorney took it upon himself to produce bank statements from several financial institutions relating to the Soad Wattar Trust, the Debtor's personal bank accounts and the Sharif Pharmacy. May 24, 2010 Hearing Transcript at 70–71. He did not state which documents were produced after the 2004 examination. The court has no idea what was contained in the late production, or whether those documents were responsive to the WIN Plaintiffs' requests and why they were not produced sooner. The court notes that the Debtor's 2004 examination took place on May 13, 2010; any documents produced by Debtor's attorney after that date were well outside of the April 28, 2010 deadline that the court set for the Debtor to comply with all outstanding discovery requests, preventing the WIN Plaintiffs from questioning the Debtor about those documents at his 2004 examination.

## V. Ragda Sharifeh's Involvement With The Bankruptcy Case and The Adversary Proceeding Before The Entry of The July 6, 2010 Order

Ragda Sharifeh testified at a deposition herein on June 10, 2010 that her brother, Richard Sharif, the Debtor, acted as her agent in the litigation in the Northern District of Texas. Transcript of June 10, 2010 Deposition of Ragda Sharifeh ("Ragda Sharifeh Depostion"), 09 B 05868, dkt. no. 78, Exhibit A, pp. 47–48. She directed the Debtor to file the litigation, instructed him on how to proceed with the litigation, and instructed him to represent to third parties that he owned the Loan Application assets.

At page 95 of the Deposition, Ragda Sharifeh testified about telling the Debtor to use property to buy a house for their mom:

Q: And again, it's checked self-employed. Were you aware that Richard represented to Washington Mutual Bank that he, as self-employed, owned Logan Square MRI Center, Sharif Pharmacy, and Hermosa Medical Center?

A: What I told him is to use the home address, the clinic address, in order to secure the amount of money to be used to buy the house for mom.

At page 96 of the Deposition, Ragda Sharifeh testified that the assets were being held out by the Debtor as his own although he was not the owner of them:

Q: So did you know that these assets, the company's and the real estate, were being held out by Richard as representing that he owned all of them? He was representing to the bank that he owned the real estate and the business?

A: He is, he is not the owner. Otherwise his ex-wife would have cleaned him out, but I told him that he could make that statement.

## VI. Prior Opportunities for Ragda Sharifeh to Intervene

■ Before this court resumed the hearing of the WIN Plaintiffs' Sanctions Motion on May 24, 2010, ten days earlier on May 14, 2010, Ragda Sharifeh filed a motion herein seeking sanctions against the WIN Plaintiffs regarding a subpoena. Adversary Proceeding 09–00770, dkt. no. 56. By seeking sanctions at that time, she had an opportunity to review the docket and discern that her agent and brother, Debtor Richard Sharif, was being challenged for failing to disclose information regarding the trust that she now claims to be involved with as both a successor beneficiary and as a successor trustee. A review of the Amended Complaint would have revealed that the trust assets were being sought by the WIN Plaintiffs.

Ragda Sharifeh, who *now* wants to intervene to protect her interests, could have sought to intervene before the court entered the July 6, 2010 order. She could have asserted the claims she now asserts in Adversary Proceeding 10–02239 in this bankruptcy case before Adversary Proceeding 09–00770 was adjudicated. Perhaps, she could have provided the requested information, especially the information regarding the formation and funding of the Soad Wattar Trust. She was on notice that the WIN Plaintiffs were seeking to have the trust declared to be the Debtor's *alter ego*, as that request was made in Count V of the Amended Adversary Complaint, which had been of record since it was filed on November 3, 2009. Adversary Proceeding 09–00770, dkt. no. 10. The WIN Plaintiffs filed the Sanctions Motion on April 15, 2010 regarding Richard Sharif's discovery failures. Adversary Proceeding 09–00770, dkt. no. 38. She should have known as of May 14, 2010 that the trust assets were at risk due to the Debtor's refusal to provide the requested information.

Ragda Sharifeh was scheduled as a creditor herein on the Debtor's Schedule F as an unsecured nonpriority creditor when he filed for bankruptcy relief on February 24, 2009. 09 B 05868, dkt. no. 1, Schedule F, p. 17. According to a Certificate of Service dated February 28, 2009, she was sent notice of the filing of this bankruptcy case. 09 B 05868, dkt. no. 9, p. 3.

In the motion to intervene, Ragda Sharifeh represents that she and other relatives owned the property that Debtor Richard Sharif represented as his own in the 2002 Loan Application. Petition to Intervene on Behalf of the Soad Wattar Revocable Living Trust of 1992 and Ragda Sharifeh ("Petition to Intervene"), dkt. no. 68, 09 B 05868, p. 4. The court will not give any credence to these unsupported assertions. They are the issues that the WIN Plaintiffs and the Bankruptcy Trustee sought to explore through various discovery requests, which were generally ignored by the Debtor. It would be unfair to give any weight to Ragda Sharifeh's unsupported factual allegations in this regard at this point.

Ragda Sharifeh also states in the Petition to Intervene that during her lifetime their mother was the beneficiary of the Soad Wattar Trust and that upon her death in 2010, she became the successor beneficiary of that trust. The WIN Plaintiffs requested but never received the documents and records regarding the formation, operation and funding of the trust, and Ragda Sharifeh did not testify at the January 19, 2011 hearing on her Motion to Intervene in support of her assertion that she is the successor beneficiary of the

Soad Wattar Trust. This paucity of information due to incomplete disclosures and her failure to testify leaves the court without any facts regarding her status as a successor beneficiary. While this issue was in dispute her agent, the Debtor, Richard Sharif, did not provide relevant information about it, which he was obligated to disclose as a debtor seeking a Chapter 7 discharge.

Ragda Sharifeh complains that she and her sister, Haifa Kaj, were not named as parties in any of Richard Sharif's bankruptcy proceedings. She does not cite any authority in support of this suggestion that they were necessary parties herein.

 Under the Illinois Trusts and Trustees Act, trustees, not beneficiaries, are vested with the power to pursue "claims in favor or against the trust estate." The trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." *In re Schneider*, 417 B.R. 907, 913 (Bankr.N.D.Ill.2009); 760 ILCS 5/4.11. The trustee, not the beneficiaries, has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust and is the proper party to be sued on behalf of a trust. *Godfrey v. Kamin*, 2000 WL 1847768, 2000 U.S. Dist. LEXIS 18213, 13–14 (N.D.Ill. Dec. 13, 2000). Ragda Sharifeh seeks to intervene as a successor beneficiary, however, beneficiaries can not act on behalf of a trust. As a purported beneficiary she probably has no standing to pursue the relief she requests herein. The trust has to be represented by its trustee, not its beneficiary.

Ragda Sharifeh asks to intervene herein pursuant to Federal Rule of Bankruptcy Procedure 2018(a) which provides: "(a) Permissive Intervention. In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." This Rule is not applicable as it applies to intervention in a bankruptcy case under the Code. She has sought leave to intervene as to the July 6, 2010 and August 5, 2010 orders entered in the Adversary Proceeding. Intervention in Adversary Proceedings is covered by Federal Rule of Bankruptcy Procedure 7024. Federal Rule of Bankruptcy Procedure 7024 provides that Federal Rule of Civil Procedure 24 applies in adversary proceedings. Federal Rule of Civil Procedure 24 provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) Permissive Intervention.

(1) In General. On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

Federal Rule of Civil Procedure 24(a) and (b).

Subsection (b)(3) of that Rule states: "Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

Federal Rule of Civil Procedure 24(b)(3).

Ragda Sharifeh, individually, as a purported successor beneficiary and as a purported successor trustee has not acted timely in pursuing intervention. She was involved in the bankruptcy case since it was filed; the Certificate of Notice shows that she was sent notice of the filing of the case on February 28, 2009. She was subpoenaed as a witness in the Adversary Proceeding on March 10, 2010, Adversary Proceeding 09–00770, dkt. no. 25. Her motion regarding the propriety of the service of a subpoena was filed on May 14, 2010, dkt. no. 56, ten days before the final hearing at which the court heard arguments on the WIN Plaintiffs' Motion for Sanctions. Instead of filing the Motion to Intervene before this adversary proceeding was resolved by this court on July 6, 2010, she sought leave to intervene herein on December 3, 2010, five months after the entry of the final order adjudicating Adversary Proceeding 09–00770.

The movant's request to intervene relies unsoundly on the Seventh Circuit's discussion of section 1109(b) of the Bankruptcy Code in *In re Wilson,* 965 F.2d 160, 169 (7th Cir.1992) in the context of a chapter 11 case. Section 1109(b) states "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue *in a case under this chapter.*" 11 U.S.C. § 1109(b). (emphasis

added). Section 1109(b), by its own terms, does not apply to this chapter 7 bankruptcy case, it applies to chapter 11 cases.

## VII. Ragda Sharifeh May Not Be a Successor Trustee

■ Ragda Sharifeh failed to produce any evidence that she is the successor trustee of the Soad Wattar Trust. While lacking in factual basis, her allegations that she became a successor trustee on July 21, 2010 reveals that this assertion has no legal basis. Paragraph 14 of her Motion to Intervene alleges that shortly after a temporary restraining order was entered by a state court judge on July 21, 2010 in a Chancery Division lawsuit that she filed on July 15, 2010, Richard Sharif resigned as the Trustee of the Soad Wattar Trust.[1] As of July 6, 2010, however, the trust no longer existed. The trust's assets became property of the Debtor's estate as of the commencement of the bankruptcy case once the July 6, 2010 order was entered declaring the trust to be the Debtor's *alter ego.* In *In re Sklarin,* 69 B.R. 949, 954 (Bankr.S.D.Fla.1987), the court ruled that "[it] is well established that property of the Debtor in the possession, custody and control of its alter ego comprises property of the estate at the commencement of the case, and that bankruptcy courts have the power to disregard separate corporate entities so as to reach the assets of its non-debtor alter ego to satisfy debts of the Debtor." (quoting *In*

---

1. Ragda Sharifeh and Haifa Kaj sued Richard Sharif in state court after this court found that the Soad Wattar Trust was his *alter ego.* They sought, amongst other things, a declaration that Ragda Sharifeh was the successor beneficiary of the Soad Wattar Trust, and an injunction requiring Richard Sharif to transfer all Soad Wattar Trust assets to Ragda Sharifeh and enjoining him from transferring assets in the Soad Wattar Trust to any of his creditors who filed claims against him in his

bankruptcy case. *See Ragda Sharifeh and Haifa Kaj v. Richard Sharif,* 10 CH 30432, filed on July 15, 2010 in the Circuit Court of Cook County, Illinois. However, the temporary restraining order entered in state court may have restrained nothing, as the trust assets became part of the bankruptcy estate as of the date of bankruptcy filing. *See infra In re Sklarin,* 69 B.R. 949, 954 (Bankr.S.D.Fla. 1987).

*re F & C Services, Inc.*, 44 B.R. 863, 868 (Bankr.S.D.Fla.1984)).

### CONCLUSION

Movant Ragda Sharifeh could have sought leave to intervene herein before this matter was adjudicated on July 6, 2010 but failed to do so. She knew of the bankruptcy case as a creditor; she was involved in the Adversary Proceeding as a witness. Pursuant to Federal Rule of Civil Procedure 24(b)(3) in exercising its discretion, the court finds that intervention would unduly delay and prejudice the adjudication of the original parties' rights.

Ragda Sharifeh's request to intervene herein regarding the July 6, 2010 and August 5, 2010 orders is DENIED.